UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY DITCHEY,<br><br>    Plaintiff,<br><br>    v.<br><br>MECHANICS BANK, et al.,<br><br>    Defendants. | Case No. 15-cv-04103-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 22 |

Plaintiff Judy Ditchey filed this Employee Retirement Income Security Act of 1974 ("ERISA") action against her employer Defendant Mechanics Bank ("the Bank") seeking severance benefits in accordance with Defendant Mechanics Bank Change in Control Plan ("the Plan"). Plaintiff moves for partial summary judgment on her claim for reimbursement of reasonable legal fees and expenses under the Plan. (Dkt. No. 22.) Having considered the parties' briefs, including their supplemental filings, and having had the benefit of oral argument on January 7, 2016, the Court GRANTS Plaintiff's motion. The Plan's unambiguous language requires the Bank to reimburse Plaintiff's legal fees regardless of the outcome of any claim for Plan benefits.[1]

**BACKGROUND**

Plaintiff is the Executive Vice President and Director of Human Resources for the Bank.[2]

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 17.)

[2] As Plaintiff filed this motion for partial summary judgment prior to the exchange of any discovery, the factual record in this case is quite limited. Plaintiff has submitted a declaration attaching a copy of the Plan (Dkt. Nos. 22-1 & 22-3) and her counsel has submitted a declaration attaching a copy of Plaintiff's claim for benefits under the Plan (Dkt. No. 22-5). Following the hearing on this motion, the Bank produced the plans for the five other executives and Plaintiff

1  (Dkt. No. 22-1 at ¶ 1.)  The Bank established the at-issue Change in Control Plan in 2008 and

2  amended it in 2014.  (Dkt. No. 1 ¶ 7; Dkt. No. 22-3 ("The Plan").)   Plaintiff acknowledged and

3  agreed to the Plan on June 5, 2014.  (Dkt. No. 22-3 at 10.[3])  Five other key executives had Change

4  in Control Plans with the Bank as of April 2015 when Ford Financial Fund II purchased a

5  controlling interest in the Bank.  (Dkt. No. 22-1 at ¶ 3.)

6        Plaintiff contends, and the Bank does not dispute, that the purchase constituted a "Change

7  in Control" under the terms of the Plan and triggered a "Change in Control Period" commencing

8  on April 30, 2015, and running for two years, until April 30, 2017.  (Complaint ¶ 9.)  The Plan

9  provides Severance Benefits in the event of an "Involuntary Termination" during the "Change in

10  Control Period."  (Dkt. No. 22-3 at 2.)  The Severance Benefits include (a) severance pay equal to

11  200% of total compensation; (b) a prorated short-term incentive award; (c) reimbursement of

12  COBRA premiums; (d) complete vesting of certain benefits; and (e) executive outplacement

13  services. (*Id*. at 2-3.)  The Severance Benefits available under the Plans of the other five key

14  executives provide nearly identical benefits.[4]  (Dkt. Nos. 42-3-42-7.)  To receive these benefits,

15  the participant must execute a general release and deliver it to the Bank within 30 days of

16  Termination.  (Dkt. No. 22-3 at 2.)  Failure to do so results in forfeiture of the Severance Benefits.

17  (*Id*.)

18        Under the Plan, six different circumstances give rise to an "Involuntary Termination":

> (i) any material diminution of the scope of your responsibilities, duties or authority or any material change in your title, position or reporting relationship, in any case, as in effect immediately prior to such Change in Control; (ii) a material reduction by the Bank in your base compensation or annual incentive opportunity, in each case, as in effect immediately prior to such reduction; (iii) any purported Termination of you by the Bank (other than a voluntary

---

attached them to her supplemental brief.  (Dkt. Nos. 42-3-42-7.)  The Bank does not dispute the authenticity of these documents.

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[4] The only differences are that one plan authorizes twice the amount of executive outplacement services and provides for payment of the premiums of the life insurance policy sponsored by the Bank (Dkt. No. 42-7 at 3), and another offers a $100,000 incentive award to be paid in the first quarter of 2015 (Dkt. No. 42-5 at 3).  These benefits are in addition to the other uniform benefits under the plans.

United States District Court
Northern District of California

> resignation initiated by you, except for a voluntary Termination initiated by you for the reasons described in this paragraph) which is not effected for Disability or for Cause; (iv) relocation of your principal place of employment by more than twenty-five (25) miles; (v) the failure of any successor entity to the Bank to expressly assume in writing the terms of this Letter or your employment agreement; and (vi) any material breach by the Bank of any material provision of your employment agreement with the Bank or any other agreement between you and the Bank.

(*Id.* at 12.) A participant must provide the Bank with written notice of the particular condition which triggers an "Involuntary Termination" within 90 days of the occurrence of the triggering condition. (*Id.*) Once such notice is provided, the Bank has 30 days to cure the condition, and if it is not cured within the 30 day period, the participant is "deemed Terminated." (*Id.*)

The Plan also includes the following:

> [t]he Bank agrees to pay as incurred, at any time from the date of a Change in Control through your remaining lifetime (or, if longer, through the 20th anniversary of a Change in Control), to the full extent permitted by law, all legal fees and expenses that you may reasonably incur as a result of any contest (regardless of the outcome thereof) by the Bank, you or others of the validity or enforceability of, or liability under, any provision of this Letter or any guarantee of performance thereof (including as a result of any contest by you about the amount of any payment pursuant to this Letter), plus in each case interest on any delayed payment at the applicable federal rate provided for in Section 7872(f)(2) of the Code based on the rate in effect at the time such payment is first due to the applicable service provider.

(*Id.* at 8.) This provision, as well as the provisions regarding Involuntary Termination, notice, and cure, is identical among the six executives' plans. (Dkt. Nos. 22-3, 42-3-42-7.)

On July 27, 2015, Plaintiff submitted a letter to the Bank seeking severance benefits under the Plan on the grounds that there had been a material diminution in the scope of her responsibility, duties or authority following the "Change in Control" which had resulted in her Involuntary Termination. (Dkt. No. 22-5.) The Bank never provided a written response to her July 27 letter (although its counsel confirmed that it had until August 27 to do so), but the Bank's counsel orally denied liability for her benefits claim. (Complaint at ¶ 17; Dkt. No. 22-2 at ¶ 5.)

Nearly two weeks after the 30-day response period ran, Plaintiff filed this action alleging a single cause of action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeking to recover

3

Plan benefits, including reimbursement of reasonable legal fees and expenses. Since filing suit, Plaintiff has submitted two sets of invoices for her legal fees to the Bank, but has not received a response. (Dkt. No. 22-2 at ¶ 6.) In response to the Complaint, the Bank filed a motion to dismiss. (Dkt. No. 19.) The following day, Plaintiff filed the underlying motion for partial summary judgment seeking reimbursement of her attorneys' fees and costs associated with her benefits claim. (Dkt. Nos. 19 & 22.) The Court heard argument regarding both these motions on January 7, 2016. The motion to dismiss was denied and the parties were ordered to submit supplemental briefing regarding the motion for partial summary judgment; specifically, to address whether the Plan is an ERISA plan. (Dkt. Nos. 30 & 31.) The parties have since done so. (Dkt. Nos. 42, 46 & 47.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most

4

favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The non-moving party's evidence must be such that a reasonable trier of fact could return a verdict in their favor, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995), and the Court "is not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

## DISCUSSION

Plaintiff contends that the Bank is liable under ERISA § 502(a)(1)(B) for reimbursement of her reasonable legal fees and expenses incurred as a result of the Bank's dispute of her right to Plan benefits. Because the Plan's plain language requires reimbursement of legal fees regardless of the outcome of any dispute, Plaintiff argues that this issue is ripe for determination so long as she states a colorable claim for relief under ERISA. The first issue is whether the Plan is an ERISA plan.

### A.     The Plan is covered by ERISA

ERISA applies to "employee welfare benefit plans" which may include a severance plan. 29 U.S.C. § 1002(1); *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316 (9th Cir. 1997) ("the definition of 'employee benefit plan' can include severance benefits"); *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) ("Provisions for severance pay may constitute an employee welfare benefit plan within the meaning of ERISA."); *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992) (severance pay considered "employee welfare benefit plan" under ERISA). Courts employ "a relatively simple test [] to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Delaye*, 39 F.3d at 237.

In *Bogue*, the Ninth Circuit considered whether ERISA governed a severance plan which provided benefits to certain executives if the company/employer was sold, and neither the employer nor the buyer offered the executive substantially equivalent" employment and the executive's employment was terminated. 976 F.2d at 1321. The court held that such a plan was an ERISA employee benefit plan because it offered more than "[t]he theoretical possibility of a one-time obligation in the future." Id. at 1322. The court reasoned:

> [T]he program's administrator [] remained obligated to decide whether a complaining employee's job was "substantially

> equivalent" to his pre-acquisition job. Although the program . . . was triggered by a single event, that event would occur more than once, at a different time for each employee. There was no way to carry out that obligation with the unthinking, one-time, nondiscretionary application of the plan administrators in *Fort Halifax* and *Wells*. Although its application was uncertain, its term was short, and the number of its participants was small, the program's administration required a case-by-case, discretionary application of its terms. Whether or not [the employer] ever thought it would have to administer an ERISA plan does not matter; there was no way to administer the program without an administrative scheme.

*Id.* at 1323. The same reasoning applies here. The Plan (or a nearly identical version of it) applies to multiple key executives providing each with nearly identical severance benefits. The Plan requires the Bank to determine whether an executive has been involuntarily terminated because she has experienced "a material diminution in the scope of [her] responsibilities, duties or authority or any material change in [her] title, position or reporting relationship," or a material reduction in the executive's base compensation, or a material breach by the Bank of the executive's employment agreement, among other triggering conditions. (Dkt. No. 22-3 at 12.) Just as in *Bogue,* these events may occur at different times for each covered employee. "There is no way to carry out that obligation with [an] unthinking, one-time, nondiscretionary application." *Bogue*, 976 F.2d at 1323; *see also Velarde*, 105 F.3d at 1317 (noting that "the key to our holding in *Bogue* was that there was 'enough ongoing, particularized, administrative discretionary analysis,'" and "not that the agreement simply required some modicum of discretion.").

Defendants' reliance on *Fontenot v. NL Indus., Inc.*, 953 F.2d 960 (5th Cir. 1992), for the contrary conclusion is unpersuasive. The *Bogue* test —that the plan "requires an administrative scheme because the circumstances of each employee's termination" must be "analyzed in light of certain criteria"—derives from *Fontenot*. *Bogue*, 976 F.2d at 1323. There, the Fifth Circuit considered a "golden parachute" severance plan which provided that "if an executive was terminated within two years of a change of control, the company would pay the executive a lump sum cash payment of three times his highest annual compensation for the preceding three years, as well as a three year continuation of certain benefits." *Id*. at 961. In concluding that this was not an ERISA plan, the court focused on the plan's requirement of "a one-time lump sum payment triggered by a single event" which does not require "any administrative scheme whatsoever to

6

1  meet the employer's obligation." *Id*. at 962 (internal citation and quotation marks omitted).  The
2  court specifically distinguished the plan before it from that at issue *in Pane v. RCA Corp*., 667
3  F.Supp. 168 (D.N.J. 1987*), aff'd*, 868 F.2d 631 (3d Cir. 1989), on the grounds that under the *Pane*
4  plan "the circumstances of each employee's termination [had to be] analyzed in light of [certain]
5  criteria*." Id*. at 963 (internal quotation marks and citation omitted).  Just as the plans at issue in
6  *Pane* and *Bogue,* the Plan here requires the Bank to determine whether the particular
7  circumstances of a Plan participant meet various criteria.
8  The Plan is thus governed by ERISA.

### B. The Plan Requires Reimbursement of Legal Fees

Plaintiff contends that the Plan's fee provision requires the Bank to pay her reasonable legal fees regardless of the outcome of any dispute regarding Plan benefits.  The Bank counters that Plaintiff is ineligible to receive Plan benefits because she failed to satisfy a condition precedent to the receipt of benefits, and lacks standing to pursue a benefits claim for the same reason.  Both of the Bank's arguments turn on their assertion that Plaintiff's claims are barred because she failed to provide a general release within 30 days of her "Termination"—an argument the Court rejected in denying Defendants' motion to dismiss.  (Dkt. No. 31.)  On the motion to dismiss, however, the question was whether the Bank had shown as a matter of law that the failure to submit the release defeated Plaintiff's claim.  It had not.

On Plaintiff's motion for summary judgment her burden is to show that her failure to submit the release does not defeat or at least create a dispute to her claim for attorneys' fees.  She has met this burden.  Although the Bank refers to the Plan's requirement of a general release as a condition precedent to the receipt of attorney fees, there is no such limitation in the Plan.  Section 12 of the Plan states that "the Bank agrees to pay as incurred" "to the full extent permitted by law, all legal fees and expenses that you may reasonably incur as a result of any contest (regardless of the outcome thereof) by the Bank, you or others." (Dkt. No. 22-3 at 8.)  The Bank is correct that the payment of *Severance Benefits* is contingent upon delivery of a general release within 30 days of Plaintiff's "Termination." And, Section 2, entitled "Severance Benefits" states that failure to meet this 30 day deadline "will cause you to forfeit the Severance Benefits under this Letter."

7

1  (*Id.*)  The reimbursement of legal fees, however, is not one of the delineated "Severance Benefits"
2  that can be forfeited; instead, it appears in a separate Plan section.  *Compare id*. at 2-3 (listing
3  benefits as (a) 200% of total compensation; (b) a prorated short-term incentive award; (c)
4  reimbursement of COBRA premiums; (d) complete vesting of certain benefits; and (e) executive
5  outplacement services) *with id*. at 7-8 (requiring reimbursement of legal fees and expenses under
6  Section 12 entitled "Full Settlement").

7  The cases cited by the Bank do not suggest a contrary conclusion as Plaintiff has not
8  argued that the Bank was prohibited from conditioning her receipt of Severance Benefits on
9  submission of the general release.  *See, e.g.*, *Lockheed Corp. v. Spink*, 517 U.S. 882, 894 (1996)
10  (concluding that a requirement for a release of claims was an acceptable condition to place on an
11  employee's receipt of benefits under an ERISA plan); *Harlan v. Sohio Petroleum Co*., 677 F.
12  Supp. 1021, 1026-27 (N.D. Cal. 1988) (concluding that the plan permissibly conditioned the
13  receipt of specified benefits under the plan on execution of a release of claims).  Rather, Plaintiff
14  contends, and indeed, the Plan language unambiguously provides, that the release condition only
15  applies to the receipt of Severance Benefits and Severance Benefits do not include the at-issue
16  reimbursement of legal fees and expenses.

17  The Bank next argues that Plaintiff is not a Plan participant and therefore lacks standing.
18  An ERISA participant is "any employee or former employee of an employer ... who is or may
19  become eligible to receive a benefit of any type from an employee benefit plan which covers
20  employees of such employer." 29 U.S.C. § 1002(7).  An individual may become eligible for
21  benefits if she has "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2)
22  eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489
23  U.S. 101, 117-18 (1989).

24  Plaintiff is a current employee with a colorable claim for benefits and is therefore a Plan
25  participant with standing.  The Bank's insistence that her claim is not colorable because she failed
26  to execute and submit the general release within 30 days of her Termination conflates the question

of eligibility for benefits with entitlement to benefits.[5] That Plaintiff's claim may ultimately be unsuccessful because she failed to submit said release is a merits question regarding her entitlement to relief which is independent of the question of whether she has a colorable claim for relief. "[D]etermining what constitutes a colorable claim to benefits is not the same as determining whether a plaintiff might recover under any cause of action. The relevant issue is whether a plaintiff *might* recover under an ERISA claim." *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1107 n.6 (9th Cir. 2007) (emphasis added). Here, if Plaintiff's theory regarding the timing of submission of the release is successful she might prevail on her benefits claim. This is sufficient to establish standing. *Moon v. Rush*, No. 2:11-CV-03102-GEB, 2013 WL 4012828, at *4 (E.D. Cal. Aug. 6, 2013) (noting the "the low threshold for colorable ERISA claims"). That her benefits claim is colorable is further demonstrated by the Court's denial of the Bank's motion to dismiss. Plaintiff thus has standing to pursue her ERISA claim.

### C. The Bank Has not met its Rule 56(d) Burden

The Bank's insistence that it requires discovery before the Court rules on Plaintiff's partial motion for summary judgment is unavailing. When seeking relief under Federal Rule of Civil Procedure 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The "[f]ailure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Id.* (internal quotation marks omitted).

---

[5] Defendants' reliance on *Sallee v. Rexnord Corp.*, 985 F.2d 927, 929 (7th Cir. 1993), and *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000), illustrates this misconception as both address whether a participant stated a colorable claim for relief based on their ability to meet the eligibility requirements of the plans at issue. *Sallee*, 985 F.2d at 929 (concluding that the plaintiffs did not have a colorable claim for benefits because "[b]oth employees voluntarily elected to leave employment knowing that severance benefits did not vest unless they were terminated" and thus were not participants.); *Wolf*, 200 F.3d at 1342 (affirming the district court's determination that the plaintiff had failed to raise an issue of material fact with respect to her eligibility for benefits under the plan as she was a leased, temporary employee and the plan only covered regular employees who were specifically defined as non-temporary employees).

9

While the Bank has submitted the required affidavit, it falls far short of satisfying Rule 56(d). First, as to whether the Plan is covered by ERISA, the Bank merely baldly states that "Defendant needs to conduct discovery to determine whether the Plan qualifies as an ERISA plan." (Dkt. No. 26-1 ¶ 2.) The Bank also insists that discovery "will uncover extrinsic evidence of the circumstances of the Plan's formation, negotiation, and Plaintiff's intentions and understandings of the negotiated terms in the event the Court finds the Plan to be ambiguous." But the Bank has not argued that the fee provision at issue on Plaintiff's motion for summary judgment is ambiguous, and absent an ambiguity, the Court must give effect to the plain meaning of the Plan.[6] *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009) ("ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: simple administration, avoiding double liability, and ensuring that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.") (internal citation and quotation marks omitted). While discovery is certainly required before the Court can rule whether Plaintiff suffered an "Involuntary Termination" within the meaning of the Plan, the Bank has not identified any discovery that is relevant to the question presently before the Court given that the Plan unambiguously provides for the payment of Plaintiff's legal fees regardless of her ultimate success on her claim.

### D. Certification Under Rule 54(b) is not Warranted

In their supplemental brief, the Bank asks the Court to certify its Order for immediate appeal under Federal Rule of Civil Procedure 54(b) if the Court grants Plaintiff's motion for partial summary judgment. Defendants' request is both procedurally and substantively improper. Federal Rule of Civil Procedure 54(b) provides that

> When an action presents more than one claim for relief… the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that

---

[6] Defendants have likewise failed to show why they "need[] to depose Plaintiff and issue written discovery requests on the issues regarding formation of the Plan and Plaintiff's execution thereof, such as whether Plaintiff wrote it and what her intentions might have been in writing it, what Plaintiff understood when she signed it, why she did and has not submitted a release, and whether the Plaintiff qualifies as an ERISA Plan." (Dkt. No. 26-1 ¶ 2.) These questions are not probative of the pending motion for summary judgment.

10

there is no just reason for delay.

Plaintiff's complaint here includes only one claim for relief. Thus, Rule 54(b) does not apply. *See Arizona State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991) (dismissing an appeal under Rule 54(b) based on the rule that "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.") (internal citations omitted). In *Miller*, the Ninth Circuit concluded that a "count for punitive damages is not 'separate and distinct' from the remainder of the counts in the complaint, but is based on a single set of facts giving rise to a legal right of recovery under several different remedies." *Id*. Further, the point of the final judgment rule is "not merely to prevent an appeal on an issue concerning which the trial court has not yet made up its mind beyond possibility of change but also to eliminate the need for separate appellate consideration of different elements of a single claim." *Cinerama, Inc. v. Sweet Music, S. A.*, 482 F.2d 66, 70 (2d Cir. 1973). Here, as Plaintiff correctly points out, review of the attorneys' fee provision would necessarily involve review of the same Plan documents and facts that the Court will be reviewing in considering the merits of Plaintiff's claim for relief. Defendants' request for entry of judgment under Rule 54(b) is therefore denied.

The Bank's alternative request that the Court stay any payment of fees under the at-issue provision until final judgment is likewise without any legal support and contradicts the Plan's language. The plain language of the attorneys' fees provision states that "[a]ny reimbursement of legal fees paid to you pursuant to this Section 12 shall be paid within ten (10) days following the Bank's receipt of an invoice from you and in no event later than the end of your taxable year next following your taxable year in which the related expense is incurred." (Dkt. No. 22-3 at 8.)

//
//
//
//
//
//

## CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment (Dkt. No. 22) is GRANTED.

**IT IS SO ORDERED.**

Dated: February 24, 2016

                                                                                                              _____
                                                                                                              JACQUELINE SCOTT CORLEY
                                                                                                              United States Magistrate Judge

12